UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REBECCA M. MARKISHTUM,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

                Defendant.

CASE NO. 10cv5601-BHS-JRC

REPORT AND RECOMMENDATION

Noted for July 15, 2011

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 12, 16, 17.)

After considering and reviewing the record, the undersigned finds that the ALJ failed to evaluate properly the medical evidence by failing to account for or discuss the opinions of treating physician Dr. Hwang regarding plaintiff's limitations, and by failing to give specific and legitimate reasons to discount the opinions of examining physician Dr. Crist or examining psychiatrist Dr. Peterson. The ALJ also committed legal error when evaluating plaintiff's testimony and credibility. Therefore, this matter should be REVERSED and REMANDED to the

administration for further consideration, including a reevaluation of the record anew as a whole, a new sequential disability evaluation and a new decision.

## BACKGROUND

Plaintiff, REBECCA M. MARKISHTUM, was forty-one years old on March 9, 2007, the date when she protectively filed for benefits under the Social Security Act (Tr. 105). She does not have any recent relevant work history (Tr. 23, 58-59).

## PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act in 2005 and her application was denied initially and on reconsideration (Tr. 102, 103). She failed to request a hearing before an Administrative Law Judge (hereinafter "ALJ"). Plaintiff applied again in 2006 and her application was denied initially, however she did not request reconsideration (Tr. 104). Plaintiff's March 9, 2007 application was denied initially and on reconsideration and plaintiff requested a hearing (Tr. 105, 106, 127-28, 130-31). Plaintiff's hearing was held on January 11, 2010 before ALJ Mattie Harvin-Woods (hereinafter "the ALJ") (Tr. 34-66).

On February 24, 2010, the ALJ issued a written decision finding that plaintiff was not disabled (Tr. 13-25). On July 21, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. See 20 C.F.R. § 404.981. On August 31, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's February 24, 2010 written decision (ECF No. 3).

In her opening brief, plaintiff presents the following issues for judicial review: (1) whether or not the ALJ evaluated properly the medical evidence, including that provided by Drs. Hwang, Crist and Peterson; (2) whether or not the ALJ evaluated properly plaintiff's alleged

onset date; (3) whether or not the ALJ evaluated properly plaintiff's credibility; and (4) whether or not the ALJ's finding that plaintiff could work as a telephone solicitor was supported by substantial evidence (ECF No. 12, pp. 1, 5, 10, 12). Plaintiff's specific argument regarding whether or not plaintiff's alleged onset date was evaluated properly mainly involve the ALJ's reliance on plaintiff's alleged onset date to give less weight to the medical opinions of Dr. Crist (see Plaintiff's Opening Brief, ECF No. 12, pp. 7-10, Plaintiff's Reply Brief, ECF No. 17, pp. 2, 6-7). Defendant filed his brief on February 3, 2011 (ECF No. 16) and plaintiff filed her reply on February 17, 2011 (ECF No. 17).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (*citing* Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (*citing* Chenery Corp., 232 U.S. at 196)); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *8, (W.D. Wash. 2009) (J. Theiler) (*citing* Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)), *adopted by* 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 98985 (2009) (J. Zilly). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is "inconsequential to the ultimate nondisability determination." Stout, supra, 454 F.3d at 1055 (reviewing legal errors found to be harmless).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly the medical evidence</u>.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." <u>Edlund v. Massanari</u>, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* Social Security Ruling "SSR" 96-2p, 1996 SSR LEXIS 9). In addition, according to the relevant Social Security Ruling, the decision of the ALJ must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist"). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, supra, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998) (*citing* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not

discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752).

"In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing* Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996); Andrews, supra, 53 F.3d at 1041).

   a.   Treating physician Dr. Inzune Kim Hwang, M.D.

Plaintiff contends that it was legal error for the ALJ to fail to consider the medical opinions of treating physician Dr. Inzune Kim Hwang, M.D. (hereinafter "Dr. Hwang") (ECF No. 12, pp. 1, 5-7). Defendant concedes that the ALJ failed to discuss the opinions of treating

physician Dr. Hwang, but contends that the error was harmless as the evidence was not significant and probative (ECF No. 16, pp. 5, 13-16).

Dr. Hwang treated plaintiff on June 7, 2006, January 17, 2007, February 27, 2007, May 3, 2007 and May 21, 2007 (Tr. 416-27, 435-37). Regarding plaintiff's limitations pursuing occupational rehabilitation classes, Dr. Hwang specifically opined that plaintiff was limited in her ability to sit or stand for prolonged periods and that she suffered from near continuous itching (Tr. 383, 425). It appears that this information regarding plaintiff's medical conditions as they related to her ability to attend the "work first program daily" was requested on January 17, 2007 (Tr. 425). The opinion offered on or approximately January 17, 2007 regarding plaintiff's existent limitations makes it more likely that plaintiff also suffered the same limitations on March 9, 2007. Therefore, although these opinions were offered a couple of months before plaintiff's application date, absent medical improvement between January, 2007 and March, 2007, the opinions are relevant as to plaintiff's condition during the appropriate period of time. The ALJ did not make any finding of medical improvement. The undersigned concludes that the opinions by treating physician Dr. Hwang are significant, probative evidence, and as such could not be dismissed properly by the ALJ without comment. See Vincent, supra, 739 F.2d at 1394-95.

The ALJ disregarded Dr. Hwang's assessed limitations regarding plaintiff's prolonged sitting and standing, and found that plaintiff had "the physical residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b)," which includes "prolonged" standing or walking (Tr. 20). See 20 C.F.R. § 416.967(b); see also SSR 83-12, 1983 SSR LEXIS 32 at *8-*9. In addition, if an ALJ finds that a claimant is capable of light work, that claimant is presumed also to be capable of sedentary work, "unless there are additional limiting factors such as loss of

fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b). Therefore, the ALJ's residual functional capacity finding also included a finding that plaintiff was capable of prolonged sitting, as "contemplated in the definition of sedentary work." See SSR 83-12, 1983 SSR LEXIS 32 at *8-*9.

The ALJ made findings that contradicted the opinions of treating physician Dr. Hwang without mentioning Dr. Hwang's opinions, and without giving "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 SSR LEXIS 9; see also Edlund, supra, 2001 U.S. App. LEXIS 17960 at *14. Therefore, the error committed by the ALJ in failing to evaluate properly the opinions of treating physician Dr. Hwang was not harmless.

For the foresaid reasons, and based on the relevant record, the undersigned concludes that the ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" for the rejection without comment of Dr. Hwang's opinions. See Lester, supra, 81 F.3d at 830-31.

b. <u>State agency examining physician Dr. Robert Crist. M.D.</u>.

Dr. Robert Crist (hereinafter "Dr. Crist") examined plaintiff on August 25, 2005 (Tr. 315-20). In addition to making some observations of normal physical responses by plaintiff, he also observed that there was "pain on pressure over the mid upper back and spinous processes of the lower lumbar spine and paravertebral musculature" (Tr. 319; see also Tr. 317, 318, 321). Dr. Crist also observed that plaintiff's skin demonstrated "a diffuse eczematoid-appearing rash. Some of the areas appear somewhat like papules and are plague-like in places, especially over the extensor surfaces of the arms and legs. It is also noted diffusely over the trunk" (Tr. 319).

Dr. Crist assessed that plaintiff symptomatology as of August 25, 2005 was such that "she would experience limitations in standing and walking for more than two hours in an eight-hour workday" (Tr. 319). He also opined that plaintiff "would be able to sit for six hours in an eight-hour day with frequent alteration in positions and regular breaks" (id.). Dr. Crist diagnosed plaintiff with "chronic muscle contraction, mechanical low back pain" and obesity, among other things (id.).

The ALJ gave little weight to Dr. Crist's opinions, in part, because the examination occurred almost two years before plaintiff's application date (Tr. 22). The August, 2005 opinions of Dr. Crist regarding plaintiff's limitations against prolonged standing and walking and against prolonged sitting without frequent alterations in position make it more likely that plaintiff suffered the same limitations regarding prolonged standing and sitting in March, 2007. Therefore, although the timing of the opinion properly is considered when comparing Dr. Crist's opinions to other medical evidence from a period of time closer to plaintiff's disability onset date, this factor alone does not make Dr. Crist's opinions irrelevant, as suggested by defendant (see ECF No. 16, p. 5).

The ALJ also gave little weight to Dr. Crist's opinions because the ALJ concluded that "the objective medical evidence does not support finding a lesser residual functional capacity than for a limited range of light work (e.g., normal, steady gait and station, a normal spinal range of motion, a negative straight leg raise, as well as intact sensation and strength in upper and lower extremities)" (Tr. 22). However, Dr. Crist was aware of this objective medical evidence, and made such observations himself when conducting plaintiff's physical examination (see Tr. 317, 318, 319, 321). The ALJ did not state that the opinions of Dr. Crist are inconsistent with the medical evidence, and the Court concludes based on a review of the relevant record that they are

not. The ALJ cited the same objective medical evidence available to Dr. Crist and made no findings regarding medical improvement between August, 2005 and March, 2007 (see Tr. 22). Nevertheless, the ALJ found that plaintiff was not as limited as opined by Dr. Crist (Tr. 319-20). The decision must include an explanation as to why the interpretation of the ALJ is correct over that of the doctor. Reddick, supra, 157 F.3d at 725.

In addition, the Court notes that the ALJ failed to find severe, and failed to discuss explicitly, plaintiff's diagnosed obesity (Tr. 18, 319). Plaintiff was 65" tall and 199 pounds on August 25, 2005 (Tr. 317). With a body mass index of 33, this indicates that plaintiff was obese. See, e.g., http://www.nhlbisupport.com/bmi/. More importantly, Dr. Crist specifically diagnosed plaintiff with obesity (Tr. 319). Although the ALJ need not discuss all evidence presented, in this case, the ALJ should have explained why the significant probative evidence of plaintiff's obesity was rejected without comment. See Vincent, supra, 739 F.2d at 1394-95. According to Social Security Ruling "SSR" 02-01, the administration considers "obesity to be a medically determinable impairment and remind[s] adjudicators to consider its effects when evaluation disability . . . . [ALJs are] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." 2002 SSR LEXIS 1 at *2-*3 (2002).

For all of the discussed reasons, and based on a review of the relevant record, the undersigned concludes that the ALJ failed to evaluate properly the opinions of Dr. Crist and did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" for the rejection of his opinions. See Lester, supra, 81 F.3d at 830-31.

  c. <u>State agency examining psychiatrist Dr. Norman F. Peterson. M.D.</u>

  Dr. Norman F. Peterson, (hereinafter "Dr. Peterson"), examined plaintiff on September 9, 2007 (Tr. 358-62). Dr. Peterson conducted a mental status examination (Tr. 360-61). He observed that her affect of depressed female was "congruent with her reported moods" (Tr. 360). Dr. Peterson observed "good" memory, but also observed that plaintiff could not subtract seven serial from one hundred," indicative of concentration difficulties (<u>id.</u>). He noted plaintiff's self-reported activities of daily living and social functioning (Tr. 360-61).

  Dr. Peterson diagnosed plaintiff with mood disorder, with major depressive features secondary to chronic eczema, and avoidant personality (Tr. 361). He concluded that plaintiff's global assessment of functioning ("GAF") was 35 (<u>id.</u>). Dr. Peterson assessed that plaintiff was "extremely impaired because of her chronic eczema" (<u>id.</u>).

  The ALJ gave little weight to some of the opinions of Dr. Peterson for a few reasons. First, the ALJ noted that plaintiff did not report depressive symptoms and noted plaintiff's lack of mental health treatment (Tr. 23). The Court notes that Dr. Peterson specifically reported that plaintiff stated that she had "tried a few antidepressants but they did not seem to work" (Tr. 358).

  The Court also notes that when a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1465. In addition, when a person suffers from mental illnesses such as the severe mood disorder with depressive features and avoidant personality disorder as the ALJ found that plaintiff suffers here, (<u>see</u> Tr. 18), and the mentally ill person does not have the requisite insight into her condition, or does not have the

memory and focus to have the ability to take a medication three times a day, this fact actually can indicate a greater severity of mental incapacity. See id.; see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)). Finally, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4, at *21-*22.

Here, the ALJ erroneously discounted plaintiff's functional limitations as opined by an examining psychiatrist in part on the basis that plaintiff did not have consistent mental health treatment without considering the notation in the record that she tried multiple antidepressants with little beneficial result. See id. For the foresaid reasons, the undersigned does not find substantial support for the ALJ's assignment of little weight to the opinions of Dr. Peterson on the basis of the ALJ's findings that plaintiff did not report mental health symptoms and did not receive consistent mental health treatment.

The ALJ also gave little weight to some of the opinions of Dr. Peterson because the ALJ found that "Dr. Peterson likely relied heavily on the claimant's self-report of which there is significant credibility concerns" (Tr. 23). The Court already has discussed Dr. Peterson's report, including his objective observations on examination of plaintiff, as well as his assessment that her affect was congruent with her reported symptoms (Tr. 360). The Court also already has discussed Dr. Peterson's mental status examination. Based on a review of the relevant record, the Court does not find substantial support for the ALJ's conclusion that Dr. Peterson likely relied heavily on plaintiff's self-reports.

In addition, the Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The mental status examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination'." Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." Van Nguyen, supra, 100 F.3d at 1465.

Here, trained psychiatrist Dr. Peterson conducted a mental status examination, opined that plaintiff was "extremely impaired because of her chronic eczema," and assigned her a GAF of 35 (Tr. 361). The ALJ made contradictory findings by discrediting the importance of Dr. Peterson's objective observations and mental status examination (Tr. 23). When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctor, are correct. Reddick, supra, 157 F.3d at 725. The ALJ failed to do so appropriately here.

For these reasons, the undersigned concludes that the ALJ rejected Dr. Peterson's opinions without providing specific and legitimate reasons "supported by substantial evidence in

the record" and failed to evaluate properly the medical evidence as a whole. See Lester, supra, 81 F.3d at 830-31. Therefore this matter should be reversed and remanded to the administration.

2. The ALJ committed legal error during the evaluation of plaintiff's testimony and credibility.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick, supra, 157 F.3d at 722 (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Id. at 972 (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, supra, 80 F.3d at 1284.

The decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. "[I]f a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a

claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* Morgan, 169 F.3d at 600) (emphasis added in Vertigan).

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" alleged symptoms. Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester, supra, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ committed a number of legal errors during the evaluation of plaintiff's testimony and credibility. During the step three finding, the ALJ concluded that plaintiff had only mild difficulties with regard to concentration, persistence or pace, because plaintiff did not report such problems (Tr. 19). The ALJ later noted however, that reviewing medical consultants Dr. Matthew Comrie, Psy.D. and Dr. Rita Flanagan, Ph.D. opined that plaintiff was moderately limited as to maintaining concentration persistence and pace during a mental status examination (id.). The ALJ again discounted this finding in part because plaintiff did not present with complaints in this area. It is not proper to discount the opinion of trained medical professionals

because plaintiff may not have appreciated all of her mental health limitations, as already discussed by the Court. See Van Nguyen, supra, 100 F.3d at 1465. In addition, psychologists opined on the basis of plaintiff's mental status examination that she was limited in this area, and neither the ALJ, nor plaintiff, is expected to have greater expertise in the interpretation of mental status examinations over trained mental health professionals, also as already discussed by the Court. Again, the ALJ must explain why his own interpretations of the objective medical evidence, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725. The court observes that the ALJ also discounted this opinion by these two psychologists regarding plaintiff's moderate limitation because the ALJ found that "it was unclear whether such a performance was due to mental symptoms" (Tr. 19). However, the ALJ did not specify any other explanation as to what caused plaintiff's deficient performance if not "mental symptoms." Again, the ALJ did not explain adequately why his interpretation of plaintiff's mental status examination results was more correct over that of the trained mental health professionals. Reddick, supra, 157 F.3d at 725.

The ALJ noted in one section how plaintiff testified that during a flare-up, she doesn't leave home because she feels physically and mentally uncomfortable (Tr. 20). The ALJ also noted that plaintiff testified that she doesn't like to be around others during these flare-ups "because of her skin symptoms" (id.). However, later in the decision, the ALJ discounted plaintiff's credibility because "contrary to the claimant's testimony that she did not leave home, the claimant reported that she walked a 1/2 to 1 mile daily" (Tr. 21). As previously indicated by the ALJ, plaintiff did not testify that she didn't leave home, but testified that she didn't leave home during a flare up (Tr. 20; see also Tr. 56, 57, 69). As plaintiff also testified that her walks were "actually a total of six to eight blocks," (Tr. 61), a fact not mentioned by the ALJ, the Court

does not find substantial support for the ALJ's adverse credibility determination from plaintiff's attempt to walk every day.

Similarly, the Court notes that the ALJ stated that contrary "to testimony that she is socially isolative, the claimant also testified that she has a lot of friends who provide transportation for her" (Tr. 22). Again, as plaintiff's testimony reflected how she felt embarrassed and isolative on days when her symptoms were bad, this alleged contradiction by the ALJ does not provide substantial support for the ALJ's adverse credibility finding (Tr. 56, 57, 69). In addition, the ALJ concludes that it is "strongly" indicated that plaintiff can perform a limited range of light, unskilled work on the basis of a few activities of daily living, such as changing a car tire, pulling on trampoline springs, chopping wood and basket weaving (Tr. 22). However, as the ALJ did not "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence," SSR 95-5p 1995 SSR LEXIS 11, and because the ALJ did not make any finding that plaintiff was "'able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," these observations of a few activities of daily living are not "sufficient to discredit a claimant's allegations.'" See Vertigan, supra, 260 F.3d at 1049 (*quoting* Morgan, 169 F.3d at 600) (emphasis added in Vertigan).

The ALJ noted that plaintiff sat for an hour and a half at her hearing without standing, and found that this weakened the claim for the need to alternate sitting and standing (Tr. 21). As both Drs. Hwang and Christ opined that plaintiff was limited in her ability to engage in prolonged sitting or standing, and because being able to sit on one occasion for an hour and a half does not transfer necessarily to the ability to engage in unlimited prolonged sitting or standing in a work setting, the Court does not find substantial support for the ALJ's decision to

discount plaintiff's credibility on the basis that she was able to sit for an hour and a half without standing.

The ALJ concluded that plaintiff's "lack of mental health treatment raises a significant credibility concern" (Tr. 21). It is erroneous to discount significantly the credibility of a person with mental impairments based on a failure to seek mental health treatment consistently as such failure actually may indicate more severe impairments. Van Nguyen, supra, 100 F.3d at 1465. As already discussed, a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." Van Nguyen, supra, 100 F.3d at 1465. "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (quoting with approval, Blankenship, supra, 874 F.2d at 1124).

In addition, also as already discussed, according to SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4, at *21-*22. As the Court already pointed out, Dr. Peterson noted plaintiff's unsuccessful attempts at achieving relief from her mood disorder with anti-depressants, which was not considered by the ALJ (Tr. 358). For these reasons, the Court does not find substantial support for the ALJ's adverse credibility finding from plaintiff's lack of mental health treatment.

The undersigned already has concluded that the ALJ did not evaluate properly the medical evidence, including that provided by Drs. Hwang, Crist and Peterson. Because of this reason, and because of the errors committed by the ALJ in the evaluation of plaintiff's testimony

REPORT AND RECOMMENDATION - 18

and credibility, the ALJ assigned to this matter on remand should reevaluate the record anew as a whole, including plaintiff's credibility, severe impairments and residual functional capacity.

CONCLUSION

Based on a review of the relevant record, the undersigned finds that the ALJ failed to evaluate properly the medical evidence, by failing to account for or discuss the opinions of treating physician Dr. Hwang regarding plaintiff's limitations, and by failing to give specific and legitimate reasons to discount the opinions of examining physician Dr. Crist or examining psychiatrist Dr. Peterson. The ALJ also committed legal error when evaluating plaintiff's testimony and credibility. Therefore, this matter should be reversed and remanded to the administration for further consideration.

Because of the specific errors, the ALJ assigned to this matter following remand should reevaluate the record anew as a whole, including the medical evidence and plaintiff's credibility. The ALJ assigned to this matter on remand should conduct a new sequential disability evaluation and issue a new decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 15, 2011, as noted in the caption.

Dated this 23rd day of June, 2011.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19